JACKSON & CRAWFORD, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

No. 40758.

NOVEMBER 17, 1931.

J. C. Pryor and L. E. Crist, for appellee.

O. M. Slaymaker and R. E. Killmar, for appellant.

STEVENS, J.—As originally pleaded, appellant's cause of action was based upon the alleged oral agreement of appellee's agent to furnish a suitable car for the shipment of cattle from Weldon to Ottumwa, Iowa, on a definite day. After the evidence was all in, appellant requested permission, which was granted by the court, to file an amendment to his petition for the purpose of conforming the pleadings to the proof. In this amendment, appellant asked judgment upon an alleged written order for the car. The defense interposed by appellee was that the oral contract was not binding upon appellee for the reason that its local agent was without authority to make it and that the same, if made, was contrary to and in violation of law. Appellee failed to furnish the car so ordered and appellant was compelled to incur additional expense and suffer depreciation in the value of his cattle by the delay incident to the transportation of said cattle from Weldon to Osceola by truck. Appellee offered and introduced in evidence Rule 65 of its published local and joint freight tariffs on file with the board of railroad commissioners, which provides rules and regulations governing live stock and other shipments. Rule 65 is as follows:

"Orders for Cars to be Given in Writing.

"Orders for cars must be placed with the carrier's agent in writing a reasonable time in advance, stating number, size and kind of cars, destination and date wanted. For convenience cars may be ordered by telephone in which case confirmation must be given in writing."

This evidence was received over the objections of appellant. The ruling of the court on these objections constitutes the subject of appellant's first assignment of error. It is the legal duty of every railway corporation, upon reasonable notice and within a reasonable time, to supply suitable cars to any person who may apply therefor for the transportation of freight, and to receive and transport the same with reasonable dispatch. Section 8038, Code, 1927. It is the duty of every common carrier to file with the board printed schedules showing rates of transportation, etc. Section 8083, Code, 1927:

"Every common carrier, subject to the provisions of this chapter shall file with the board and shall print and keep open to public inspection schedules showing the rates for the transportation within this state of persons and property from each point upon its route to all other points thereon and from all points upon its route to all points upon every other route leased, operated, or controlled by it; and from each point on its route or upon any route leased, operated, or controlled by it to all points upon the route of any other common carrier, whenever a through route and a joint rate shall have been established or ordered between any two such points. If no joint rate over a through route has been established, the schedules of the several carriers in such through route shall show the separately established rates, applicable to the through transportation."

Rule 65 quoted supra is a part of the printed schedule thus filed by appellee in the office of the board of railroad commissioners and same was in force on the date of the transaction in question. The provisions of the schedule thus required to be filed with the board of railroad commissioners are for the purpose of preventing discrimination against, and preferences in favor of, any particular shipper or class of shippers and are binding equally upon both parties. Hawarden Sand & Gravel Co. v. Chicago & N. W. R. Co., 185 Iowa 1168; Tuller v. Chicago, R. I. & P. Railway Co., 186 Iowa 1070; Foley v. C. G. W. R. Co., 205 Iowa 72; Herminghausen v. Express Co., 167 Iowa 230.

Rule 65 requires that all orders for cars for the shipment of freight be made in writing, or, if made by telephone, that such order be confirmed in writing. Neither the shipper nor the carrier may depart from or violate this rule. Strict observance thereof by both parties is essential to its enforcement as well as the accomplishment of the purpose and design of the statute.

It is pleaded and urged by appellant that it has long been the custom of appellee to receive verbal orders for cars and to verbally contract as in the present instance and that, therefore, the rule has been waived and may not be asserted or relied upon by appellee. The unsoundness of this position is apparent from a moment's consideration of the purpose of the legislature in enacting Section 8083 of the Code of 1927. A waiver, if permitted, would utterly defeat the very purpose of the legislative requirement.

The right of the carrier to waive a similar provision was before the Federal Supreme Court in Davis v. Henderson, 69 L. Ed. (U. S.) 182. In that case, the court held that the rule involved was a part of the published tariff and could not be waived.

Davis v. Cornwell, 68 L. Ed. (U. S.) 848, involved a contract in which a certain common carrier agreed to furnish cars to be loaded with cattle for an interstate shipment on a certain date. The court held that:

"The agent's promise that the cars would be available on the day named was introduced to establish an absolute obligation to supply the cars, not as evidence that the shipper had given due notice of the time when the cars would be needed, or as evidence that the carrier had not made reasonable efforts to supply the cars. The obligation of the common carrier implied in the tariff is to use diligence to provide, upon reasonable notice, cars for loading at the time desired. A contract to furnish cars on a day certain imposes a greater obligation than that implied in the tariff. For, under the contract, proof of due diligence would not excuse failure to perform.

"Chicago & A. R. Co. v. Kirby, 225 U. S. 155, 56 L. Ed. 1033, * * * settled that a special contract to transport a car by a particular train, or on a particular day, is illegal when not provided for in the tariff. That the thing contracted for in this case was a service preliminary to the loading is not a difference of legal significance. The contract to supply cars for loading on a day named provides for a special advantage to the particular shipper, as much as a contract to expedite the cars when loaded. It was not necessary to prove that a preference resulted in fact. The assumption by the carrier of the additional obligation was necessarily a preference. The objection is not only lack of authority in the station agent. The paramount requirement that tariff provisions be strictly adhered to, so that shippers may receive equal treatment, presents an insuperable obstacle to recovery."

It is clear that the agent of appellee could not on its behalf waive Rule 65 and it was properly admitted in evidence. What is said above sufficiently disposes of the second proposition relied upon by appellant for reversal: namely, that the court erred

in excluding evidence of the custom of appellee in receiving verbal orders and furnishing cars to shippers generally. The duty to order cars in writing rests upon the shipper, and if he desires to bring himself within the statute and the rule of appellee, he must make his request in writing, or, if made over the telephone, confirm the same in writing.

Some time after appellants verbally notified the agent of appellee at Weldon that they desired a car for the following day in which to transport a carload of cattle, the agent made a private memorandum as follows:

"3/25/29                                        11 A. M.
Jackson & Crawford
1 Stk Car — Cattle — Otta — one day this week"

Interpreted, this memorandum means that a stock car for cattle to be shipped to Ottumwa was desired by appellant on some day during the week of March 25th. This memorandum is the basis of appellant's amendment to the petition attempting to state a cause of action upon a written instrument.

The evidence without conflict shows that the order for the car was verbal; that nothing was said by appellant about making such order in writing. No writing was then made nor did either member of the co-partnership know until perhaps the trial of the cause below that the written memorandum had been made by the agent. The testimony of the agent was that the writing, unsigned, was a mere memorandum made for his convenience. In this state of the record it would be a perversion of the undisputed testimony on both sides of the case for the court to hold that the memorandum constituted a written order for the car, and the court very properly refused to submit this issue to the jury. The memorandum was neither in form nor purpose an order for a car. It was just what it purports to be—a mere private memorandum for the use of the agent. The law governing this case must be regarded as fully settled in this case. Hawarden Sand & Gravel Co., supra, is directly in point, and it seems to us conclusive.—Affirmed.

EVANS, ALBERT, MORLING, GRIMM, and WAGNER, JJ., concur.