13629

LYDA v. COOPER *ET AL.*

(2 Cases)

(169 S. E., 236)

November, 1930.

*Messrs. W. Marion Swink* and *Lyles & Daniel,* for appellant,

*Messrs. Osborne & Butler,* for respondents,

May 1, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

These cases were heard together on Circuit, and it is agreed that the decision of the appeal in the case of Della Lyda shall be decisive of that in the case of Clarence Lyda.

The respondent C. I. Cooper is the owner of a furniture store at Woodruff, S. C., which is conducted under the name of Cooper Furniture Company, by which title we will designate it. J. H. Hinton was manager of the business. From it furniture, household goods and utensils, and the like articles were sold on the installment plan; that is to say, a payment of cash at the time of purchase, and installments of weekly payments of an agreed sum. The contract was in writing. By its terms the goods were rented to the purchaser with the option to purchase them when paid for in full. Upon the failure to pay any of the installments, the seller was given the right "to repossess said articles without hinderance or process of law." The instrument is of the nature of a title retaining contract, which, in this State, is held to be a chattel mortgage.

Della and Clarence Lyda are husband and wife; each of them bought goods of Cooper Furniture Company and each of them signed one of these contracts. They were employed in a cotton mill at Woodruff.

We will deal with the case of Della Lyda.

It is not denied that she was in arrears with her payments. There is a contradiction in the evidence as to the time of the last payments. While she and her husband were absent from home, and their house locked, or fastened, the respondent Hinton and his assistant, Baldwin, came to repossess the goods. Finding the house closed, Hinton inquired of Mrs. Hall, the mother of Mrs. Lyda, and who lived across the street, for the key to the Lyda house and was informed that she did not have it. He testified that Mrs. Hall advised him

to open the window and go through that. It was not shown that Mrs. Hall had any authority to give permission to effect entrance in this way; she was dead when the case was tried. Be that as it may, Hinton went through the window, opened the doors, and he and his assistant carried away the articles covered by the contract. In the drawers of the chifferobe were articles of Mrs. Lyda's wearing apparel and the clothes prepared for the child to which she looked forward to give birth within a short time. These were taken out and left in a trunk. When the Lydas returned home they found it denuded of everything save this trunk and a spring mattress, and had to go to her mother's home.

She brought this action for damages, actual and punitive, for the alleged willful, wanton, reckless, and high-handed entrance of her home in her absence, for trespass and the invasion of her property rights. The defendants answered, setting up the breach of the contract and their right under its terms to repossess themselves of the goods they had sold her.

The cases were heard by Judge Grimball and a jury at the April, 1932, term of the Court of Common Pleas for Spartanburg County. At the conclusion of all the testimony, the presiding Judge directed a verdict for the defendant. He embodied his reasons therefor in an order in which he declared that his action was controlled by the case of *Willis v. Whittle*, 82 S. C., 500, 64 S. E., 410; that in that case it appeared that in a chattel mortgage covering a horse, the condition of the mortgage was broken; that when the agent went to the home of the mortgagor to take the horse, the mortgagor and his sons were absent, his wife said her husband had instructed her to object to the taking of the horse, and accordingly she did so; nevertheless, the mortgagee went to the stable, took the horse, and carried him away; that there was no breach of the peace; that the mortgagee had the right to enter upon the premises to seize the property; that he did it in an orderly manner and hence was not

a trespasser; *that it cannot be said* (in the present case) *that there was a breach of the peace. "The entry upon the premises of the plaintiffs, in order to make the seizure, was a peaceful entry, without a breach of the peace."* (Italics added.)

Again, from the order: "If either of the plaintiffs had been at the house at the time the mortgagee arrived to take possession of the furniture, and if either of the plaintiffs had protested against the entrance, and if the mortgagee had made an entrance over such protest a different state of facts would have been presented to the Court in such case."

Should it not have been left to the jury to determine whether a verbal protest against entrance upon one's premises is more potent than locked doors—doors which have been locked to protect the contents of the house in the absence of the owners?

The order appealed from decides that there was here no breach of the peace. Was not that also a fact for the jury to decide?

What constitutes a breach of the peace? Webster's New International Dictionary defines "peace" as "a state of rest, or tranquillity." Anything which disturbs that state is a breach of the peace.

In the case of *Rucker v. Smoke,* 37 S. C., 377, 16 S. E., 40, 34 Am. St. Rep., 758, Buyck had a mortgage on Rucker's mule, the condition of which mortgage was broken; he appointed Smoke his agent to take possession of the mule under the mortgage. The agent made demand for the mule, which was refused; he broke open the stable door and took it. In an action against Buyck and his agent, Smoke, plaintiff had a verdict which was sustained on appeal.

In the case of *Williams v. Tolbert,* 76 S. C., 211; 56 S. E., 908, it appears that Tolbert had a mortgage on Williams' mule; that the condition of the mortgage was broken. Miller was appointed agent to take the property under the power given in the mortgage. He went to the stable and took the

mule. Williams brought action and was given a verdict, which, on appeal, was upheld.

In the case of *Willis v. Whittle,* 82 S. C., 500, 64 S. E., 410, upon which Judge Grimball founded his order, there was no force used to repossess the property; it is true it was taken in the absence of the mortgagor and over the protest of his wife, but there was no show of force. There was no breach of the peace.

"In general terms, a breach of the peace is a violation of public order, a disturbance of public tranquillity, by any act or conduct inciting to violence." Annotation to case of *Kansas v. Hebert,* 48 A. L. R., 85.

"By 'peace,' as used in the law in this connection, is meant the tranquillity which is enjoyed by the citizens of a * * * community, where good order reigns among its members, which is the right of all persons in political society. * * * It is not necessary that the peace be actually broken to lay the foundation of a prosecution for this offense. If what is done is unjustifiable, tending with sufficient directness to break the peace, no more is required." 8 R. C. L., 284.

In *Miles v. State of Oklahoma,* 30 Okl. Cr., 302, 236 P., 57, 58, 44 A. L. R., 129, it was held: "It is not necessary that an act have in itself any element of violence in order to constitute a breach of the peace."

"In levying a distress, the landlord may seize the tenant's goods, if he can do so peaceably; but, if he is resisted, he must stop short of violating the law or committing a breach of the peace, and resort to the Courts to obtain possession of the tenant's goods in order that he may subject them to his lien for rent." *Hamilton v. Blanton,* 107 S. C., 142, 92 S. E., 275, 277.

"After plaintiff's tenant, who was in arrears, abandoned the premises leaving therein furniture which he had bought from defendant but had not finished paying for, defendant's entry into the premises to remove the furniture, made over protest of plaintiff, was an 'unlawful entry' within Civ. Code

1912, § 4064, and cannot be justified even though there was no breach of the peace." *Lark v. Cooper Furniture Company,* 114 S. C., 37, 102 S. E., 786.

In that case the defendant, who is the same defendant in this case, had a "lease" contract similar to that in the present case, signed by one Wilson, the tenant of Lark, to whom he was in arrears for rent. He abandoned the premises and sent word to Cooper Furniture Company to come and get the furniture, which he had not finished paying for. The landlord forbade Cooper entering the house; over such protest he entered and took the property. The Court said, in addition to the quotation above: "Even though the entry in the instant case did not break the peace, yet it was made without right, for it was made against the protest of the owner, and with manifestation of force."

In the case now before this Court, the entry was made in the absence of the occupants of the house, despite locked doors, and with manifestation of force.

We think it should have been left to the jury to determine whether the entry was made in a lawful way, whether defendants were trespassers, and whether there was such a breach of the peace as the law contemplates in cases of this nature.

For this reason the order appealed from is reversed, and the case remanded for trial.

This disposition applies to both cases.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.