15049

MILLER *ET AL.* v. CENTRAL CAROLINA TELEPHONE COMPANY

(8 S. E. (2d), 355)

328

*Messrs. Thomas & Thomas* and *Knight & Arant,* for appellant,

*Mr. James E. Leppard,* for respondents,

March 28, 1940.

The opinion of the Court was delivered by MR. E. H. HENDERSON, ACTING ASSOCIATE JUSTICE.

The plaintiffs, E. J. Miller and E. E. Miller, reside in the Town of Jefferson, in Chesterfield County, where they operate a drug store. For several years prior to 1935 they had used, in their place of business, a telephone of the defendant, Central Carolina Telephone Company. Quite often customers of the store made use of plaintiffs' telephone for long distance calls, and sometimes neglected to pay the drug store for them. The Millers were required by the company to pay for these calls, and as a result they had their telephone taken out on August 1, 1935.

Some time later the defendant discussed with the plaintiffs the question of resuming their telephone connection, and after conferences on the subject, the plaintiffs decided to have the telephone installed again.

The application for service which the plaintiffs signed provided that plaintiffs agree "to pay established rates for all such service," and that "in making this application the undersigned agreed to the rules and regulations of the telephone company as set forth in the exchange tariff."

A copy of the telephone directory of the Jefferson exchange was furnished the plaintiffs, and this had printed in it the following provisions: "Subscribers are responsible for all charges for messages originating from or reversed to their telephones." "The subscriber shall pay monthly in advance or on demand all charges for exchange service and equipment and shall pay on demand all charges for toll service. The subscriber assumes responsibility for all charges for exchange service and toll messages originating at the subscriber's station and for toll messages received at the subscriber's station on which the charges have been reversed

with the consent of the person called." "In the event of abandonment of the station, the nonpayment of any sum or any other violation by the subscriber of the telephone company's rules and regulations applying to the subscriber's contracts or to the furnishing of service, the company may without notice, either (a) suspend the service until all violations have ceased, or (b) terminate the subscriber's contract without the suspension of service, or (c) following a suspension of service, sever the connection and remove any of its equipment from the subscriber's premises."

Thereafter, the defendant presented bills to the plaintiffs for long distance calls over the telephone which plaintiffs claimed were not authorized by them, and which they contended had wrongfully been charged to them, the bill amounting to Six and 5/100 ($6.05) Dollars.

The plaintiffs, claiming under a verbal contract with the company restricting their liability to long distance calls actually made by them, or expressly authorized by them, refused to pay the bill. On August 15, 1936, the company gave plaintiffs notice that unless the bill was paid within four days, the telephone service would be discontinued, and such payment not being made the company disconnected the telephone on August 21, 1936.

This action was begun on October 31, 1936, in the Court of Common Pleas for Chesterfield County, for actual and punitive damages, and was tried before His Honor, Judge Philip H. Stoll, and a jury, at the September, 1939, term of Court.

At the trial, the plaintiffs offered evidence tending to show that just before the telephone service was reinstated in 1935, a verbal contract was made between the parties, whereby the company agreed to charge the plaintiffs, in addition to local service, the regular rates for such long distance calls as the plaintiffs themselves should make, or should expressly authorize others to make over the telephone, and would not charge them for long distance calls which were not expressly

authorized by them. This evidence was admitted over the objection of the defendant.

Witnesses for the defendant denied that such a verbal contract was ever made.

At the conclusion of all of the evidence, the defendant moved the Court for the direction of a verdict in its favor, on a number of grounds, but we shall confine our attention to the ones Numbered 2, 3, 4, 5, 11, 12 and the last sentence of Number 13, which are as follows:

"2. The rules and regulations under which this company is compelled to operate make the owner of a phone liable for the toll charges that go over that telephone.

"3. The company and the customer are bound by the rules and regulations made effective by the Public Service Commission and cannot make special and private agreements in conflict with the regulations.

"4. Under the rules and regulations of the Public Service Commission a subscriber is responsible for all messages originating from or reversed to his telephone.

"5. The rules and regulations by the commission are made for the protection of the public as well as for the utilities, and, as such, are binding on both and cannot be changed or altered or abrogated except by the approval of the commission."

"11. A telephone company is a utility or common carrier and as such is under the control of the Public Service Commission, and cannot make contracts as to the rates and types of service to be rendered except in accordance with such regulations and not contrary thereto.

"12. A utility must have uniform and reasonable rates and regulations.

"13. * * *. Also if it were established that such contract as is alleged in this case was made, it would be void as being against public policy and contrary to the rules and regulations of the Public Service Commission under which

this utility renders service and under which this and all other customers receive service."

This motion was refused by his Honor, the Circuit Judge, and after the arguments and the charge by the Court, the jury found a verdict in favor of the plaintiff for Seven Hundred ($700.00) Dollars actual damages, and Eight Hundred ($800.00) Dollars punitive damages.

The defendant company has appealed to this Court on thirty-eight exceptions, but we find it necessary to consider only the ones Numbered 12, 13, 14 and 16. These are as follows:

"12. That the trial Judge erred in refusing defendant's motion for a directed verdict, on the following ground, to wit: The error being that a utility must have uniform and reasonable rates and regulations.

"13. That the trial Judge erred in refusing defendant's motion for a directed verdict, on the following ground, to wit: The error being that the rules and regulations under which this company is compelled to operate make the owner of a telephone liable for the toll charges that go over the telephone. Under the rules and regulations of the Public Service Commission the plaintiffs are responsible for all messages originating from or reversed to their telephone.

"14. That the trial Judge erred in refusing defendant's motion for a directed verdict, on the following ground, to wit: The error being that the company and the customer are bound by the rules and regulations made effective by the Public Service Commission, and cannot make special, re-strictive, or private agreements in conflict with the regula-tions. The rules and regulations by the Commission are made for the protection of the public as well as for the utilities, and as such are binding on both, and cannot be changed or altered or abrogated except by the approval of the Com-mission."

"16. That the trial Judge erred in refusing defendant's motion for a directed verdict on the following ground, to

wit: The error being that a telephone company is a utility, or common carrier, and as such is under control of the Public Service Commission, and cannot make contracts as to the rates and types of service to be rendered except in accordance with such regulations, and not contrary thereto."

On consideration of a motion for a directed verdict, the evidence, of course, must be viewed in the light most favorable to the plaintiffs, and so we shall assume that the contract was made.

The question, then, to be determined by the Court is: May the parties make a valid contract, limiting and restricting the liability of the plaintiffs, as subscribers, and permitting them to refuse to pay for long distance calls originating at their telephone when not expressly authorized by them, contrary to the rules and regulations of the Public Service Commission which makes them responsible for all calls originating at their telephone?

The authority of the Public Service Commission over telephone companies and its power to adopt rules and regulations for the conduct of the business of such companies is found in Section 8289, of the Code of 1932:

"§ 8289. The railroad commission of this State shall have and exercise the same jurisdiction and supervisory powers and control over and concerning all telephone lines, stations and exchanges in this State, and over all persons, firms or corporations owning or operating such telephone lines, stations or exchanges for the transmission of intelligence for hire, that it now has and exercises over and concerning railroads, telegraph and express lines, and the persons, firms, or corporations owning or operating them in this State; and said commission shall especially have the right and power and it shall be its duty to fix and regulate the rates or tolls to be charged by the owners or operators of all such telephone lines, stations or exchanges, for the transmission of intelligence for hire, *   *   * and also to

make and enforce rules and regulations by which all persons, firms or corporations, owning or operating telephone lines, stations, or exchanges in this State for the transmission of intelligence for hire, shall be governed in the conduct of said business * * * ."

The powers formerly exercised by the railroad commission are now conferred upon the Public Service Commission. Constitution of 1895, Article 9, Section 14, Acts of 1934, page 1629; Acts of 1935, page 25.

It will thus be seen that the Commission is granted far-reaching powers to make and enforce reasonable rules and regulations for telephone companies, with reference to the service furnished and the rates charged.

Acting under the power with which the General Assembly has clothed it, the Public Service Commission has duly adopted and promulgated the following rules and regulations:

"10. The subscriber shall pay monthly in advance or on demand all charges for exchange service and equipment and shall pay on demand all charges for toll service. The subscriber assumes responsibility for all charges for exchange service and toll messages originating at the subscriber's station, and for toll messages received at the subscriber's station on which the charges have been reversed with the consent of the person called."

"12. In the event of abandonment of the station, the non-payment of any sum due for exchange, toll or other services or any other violation by the subscriber of the Telephone Company's rules and regulations applying to subscriber's contracts or the furnishing of service, the Company may without notice, either (a) suspend service until all violations have ceased, or (b) terminate the subscriber's contract without suspension of service, or (c) following a suspension of service, sever the connection and remove any of its equipment from the subscriber's premises."

A telephone company is a common carrier of intelligence for hire. Constitution of 1895, Article 9, Section 3; *State ex rel. v. Gwynn v. Citizen's Telephone Co.,* 61 S. C., 83, 39 S. E., 257, 55 L. R. A., 139, 85 Am. St. Rep., 870.

As such it has the duty to furnish service to all customers alike, and to charge them uniform rates therefor. It has no right to discriminate against one subscriber, as to rates or service, nor to give preferences or favors to others. *State ex rel. Gwynn v. Citizens' Telephone Co., supra.*

To bring about such uniformity it is necessary that the rules and regulations of the Public Service Commission, adopted pursuant to law, be observed by telephone companies. To allow a company, by carrying into effect a special contract and thereby to furnish to one subscriber service, and to charge him rates, which are not in accord with the general rules and regulations of the Commission, would altogether destroy the uniformity which the law demands, and defeat the object intended. It would give to one subscriber a special privilege which is denied to others.

Discrimination by a telephone company is expressly prohibited by the Constitution.

"No discrimination in charges or facilities for transportation of the same classes of freight or passengers, or for the transmission of intelligence within this State, or coming from or going to any other State, shall be made by any railroad or other transportation or transmission company between places or persons." Constitution of 1895, Article 9, Section 5.

The uniformity of service and rates required of telephone companies is quite similar to that which is enforced against railroad corporations. Discrimination by such companies is forbidden by Section 8295, of the Code of 1932.

This Court has said: "The parties had no right to agree, and could not make a valid agreement that it should be considered and treated as a carload lot of either or both, because the allowance by the Court of such agreements would completely annul the statute prohibiting carriers, under heavy penalty, from making discriminations. * * * If shipper and carrier are allowed by agreement to vary classifications and call a commodity what it is not, the door is thrown wide open to all sorts of discriminations which are prohibited by the statutes." *Byrd v. Atlantic Coast Line R. Co.,* 106 S. C., 1, 90 S. E., 181, 182.

A similar rule is followed by the Federal Courts in cases arising under the Interstate Commerce Act, 49 U. S. C. A., § 1 *et seq.,* and it is held that railroad companies are not at liberty, by private contract, to alter the terms of the service prescribed by the regulations of the Interstate Commerce Commission. *Southern Ry. Co. v. Prescott,* 240 U. S., 632, 36 S. Ct., 469, 60 L. Ed., 836; *Davis v. Henderson,* 266 U. S., 92, 45 S. Ct., 24, 69 L. Ed., 182; *Chicago & Alton R. Co. v. Kirby,* 225 U. S., 155, 32 S. Ct., 648, 56 L. Ed., 1033, Ann. Cas., 1914-A, 501.

The decisions of other states are to the same effect: *Crawford County v. Bushmaier,* 182 Ark., 175, 31 S. W. (2d), 144; *Jackson & Crawford v. Chicago, Burlington & Q. R. Co.,* 213 Iowa, 265, 238 N. W., 912; *Mollohan v. Atchison, T. & Sante Fe R. Co.,* 97 Kan., 51, 154 P., 248, L. R. A., 1918-A, 175; *Chesapeake & P. Telephone Co. v. Baltimore & O. Telephone Co.,* 66 Md., 399, 7 A., 809, 59 Am. Rep., 167.

We think that the case of *Southern R. Co. v. Cumberland T. & T. Co.,* 127 Tenn., 566, 156 S. W., 853, 45 L. R. A. (N. S.), 990, Ann. Cas., 1914-B, 1187, relied upon by the respondent, is based upon a situation quite different from the present case, since in the Tennessee case there was no question of a rule of the company, nor a regulation of a

public service commission, requiring the subscriber to pay for all·calls originating at his telephone.

Nor do we think that the facts in the case before us may properly be said to disclose a *bona fide* dispute as to the amount due on the plaintiffs' bill, under the rule as laid down in the case of *Arnold v. Carolina Power Co.,* 168 S. C., 163, 167 S. E., 234, in view of the legal requirement here that the subscriber assumes responsibility for every call from his station. To so hold would amount to giving force and effect to a special contract which the parties had no right to make under the law.

The contract in the present case extended to the plaintiffs the privilege of refusing to pay for long distance calls originating at their telephone which they had not authorized; whereas all other subscribers were required to pay for such calls whether authorized by them or not.

Our opinion, then, is that the special contract is invalid and unenforcible, as being contrary to the rules and regulations legally adopted by the Public Service Commission; and that the defendant had a right to discontinue the telephone service upon plaintiffs' refusal to pay the charges made.

It follows, we think, that his Honor, the Circuit Judge, erred in refusing to direct a verdict in favor of the defendant.

Accordingly, the judgment of the Circuit Court is reversed, and the cause is remanded to that Court with directions to enter judgment in favor of the defendant under Rule 27 of this Court.

Judgment reversed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES CARTER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.