### PLATE v. SOUTHERN BELL TEL. & TEL. CO., Inc.

Civ. A. No. 2688.

United States District Court
E. D. South Carolina, Columbia Division.
July 11, 1951.

L. H. Andrews, Columbia, S. C., for plaintiff.

Nelson, Mullins & Grier, Columbia, S. C., for defendant.

WYCHE, Chief Judge.

This is an action for alleged wilful trespass and was tried before me on June 12, 1951, without a jury.

The complaint alleges that sometime prior to October 15, 1950, the plaintiff engaged the telephone services of the defendant company at his apartment No. K10 Gonzales Gardens, Columbia, South Carolina, and that while he and his wife were absent from their apartment the defendant, through its agents and servants, clandestinely secured a key and unlawfully and wilfully entered plaintiff's apartment and removed the telephone instrument therefrom. The answer of the defendant admits the suspension of the service and the removal of the instrument, but alleges that the service was suspended and the instrument removed for non-payment of charges due by the plaintiff, and that the defendant had a right, under its rules and regulations, which were on file with and approved by the South Carolina Public Service Commission, to suspend the service and to enter upon the premises and remove the instrument after the refusal of the plaintiff to pay his bill.

The plaintiff is not suing for a wrongful suspension of his telephone service but for an alleged trespass. It was conceded by plaintiff that he was several months behind in the payment of his telephone bill and that the plaintiff had the right to suspend his telephone service and remove the telephone from his apartment, provided the telephone company had secured entrance to such apartment in a proper and lawful manner. The principal, and in fact, the sole issue in the case, is whether or not the action of the. agent of the telephone company in entering plaintiff's apartment and removing the instrument under the circumstances, hereinafter referred to, constituted an unlawful trespass. If it did the defendant would be liable for the damages resulting therefrom. If the entry was lawful then there can be no recovery.

I find the facts specially and state separately my conclusions of law in the above cause as follows:

### Findings of Fact

The application for telephone service, which the plaintiff signed, provided that the subscriber agreed that the telephone service to be furnished by the telephone company was subject "at all times to lawful rates and regulations". The pertinent provisions of the rules and regulations of the defendant, which are on file with, and approved by, the South Carolina Public Service Commission, and which were in effect at the time that plaintiff applied for service, as well as at all other relevant times, are as follows:

"Equipment, instruments and lines furnished by the Telephone Company on the premises of a customer or authorized user of the Telephone Company are the property of the Telephone Company and are provided upon the condition that such equipment, instruments and lines, except as expressly provided in this tariff, must be installed, relocated and maintained by the Telephone Company and that the Company's employees and agents may enter said premises at any reasonable hour to make collections from coin boxes, to install, inspect or repair any part of the Telephone Company's equipment, apparatus and lines on the subscriber's premises, or upon termination or cancellation of the service, to remove such instruments and lines. Such equipment shall not be used for any toll or consideration to be paid by any other person than the subscriber, nor for performing any part of the work of transmitting, delivering or collecting any message, where any toll or consideration has been or is to be paid any party other than the Telephone Company, without the written consent of the company.

\* \* \* \* \* \*

"The subscriber shall pay monthly in advance or on demand all charges for exchange service and equipment and shall pay on demand all charges for toll service. The subscriber assumes responsibility for all charges for exchange service and toll messages originating at the subscriber's

station, and for toll messages received at the subscriber's station on which the charges have been reversed with the consent of the person called.

"All charges due by the subscriber are payable by the subscriber at the Telephone Company's Commercial Office or at any other agency duly authorized to receive such payments. If objection in writing is not received by the Telephone Company within thirty days after the bill is rendered, the account shall be deemed correct, and binding upon the subscriber.

"In the event of abandonment of the station, the non-payment of any sum due for exchange, toll or other services or any other violation by the subscriber of the Telephone Company's rules and regulations applying to subscribers' contracts or to the furnishing of service, the Company may without notice, either (a) suspend service until all violations have ceased or (b) terminate the subscriber's contract without suspension of service or (c) following a suspension of service, sever the connection and remove any of its equipment from the subscriber's premises."

At the time that the telephone service was discontinued and the telephone removed from plaintiff's apartment he had failed to pay his telephone bill for the preceding three months. Prior to October 3, 1950, he had been notified several times that his account was past due, and on October 3, 1950, a registered letter was sent to him advising that unless his bill was paid the service would be subject to suspension on October 9, 1950. Plaintiff admitted receiving this registered letter. The service was thereafter suspended on outward calls on October 17, 1950, and on inward calls on October 24, 1950. A visit was made to the residence of the plaintiff on October 26, 1950, and the company's representative, finding no one at home, left a notice under plaintiff's door, stating that the equipment would be removed if the bill was not paid, or satisfactory arrangements made for its payment, by October 30, 1950. When plaintiff still neglected to pay his bill the instrument was removed from plaintiff's apartment on November 1, 1950. Plaintiff, testifying in support of his claim, admitted that his telephone bill was several months in arrears and at no time did he contend that he had communicated with the telephone company and offered to pay the bill or to make satisfactory arrangements for its payment.

The telephone was removed by the defendant under the following circumstances: L. M. Mann, the telephone employee who was sent to remove the instrument, went to plaintiff's apartment and finding no one at home then went to the main office of Gonzales Gardens, the Government financed housing development in which plaintiff's apartment was located. He there conferred with Mr. R. A. Wood, Shop Foreman of Gonzales Gardens, who had a master key to all the apartments and who offered to admit Mr. Mann to plaintiff's apartment for the purpose of removing the telephone instrument. Mr. Wood then went with Mr. Mann to plaintiff's apartment and unlocked the door. They both entered the apartment and the telephone was removed in a matter of minutes. Plaintiff does not contend that any damage was done to or in his apartment, but he claims that defendant had no right to enter it in his absence and that the Housing Authority's agents in charge had no right to allow an employee of the telephone company to enter without the plaintiff's permission. Mr. Wood testified that plaintiff, after moving into his apartment, had told him that any time he needed to go into the apartment that he could do so, but told him not to let any colored employees of the housing development go into his apartment when the plaintiff was not there.

The action of defendant's agent in entering plaintiff's apartment, with the permission and consent of the person, presumably in charge thereof, was reasonable and proper under the circumstances, and did not constitute a trespass.

The manner in which defendant's employee entered plaintiff's apartment and removed the telephone instrument and other equipment did not constitute a breach of the peace nor could it reasonably be supposed that it would tend to provoke a breach of the peace.

## Conclusions of Law

█ The rules and regulations of the defendant telephone company on file with and approved by the Public Service Commission were binding upon the plaintiff in this case whether or not he agreed to them. Miller v. Central Carolina Telephone Co., 194 S.C. 327, 8 S.E.2d 355, 127 A.L.R. 722.

The right of a public utility to discontinue service because of the subscriber's refusal to pay for such service has been definitely settled in this state. Barrett v. Broad River Power Co., 146 S.C. 85, 143 S.E. 650; Hiers v. Southeastern Carolinas Telephone Co., 216 S.C. 437, 58 S.E.2d 692.

█ Under the aforesaid rules and regulations a customer subscribes only to telephone service and acquires no property interest in the facilities furnished to him for the rendering of that service. In this case, therefore, the telephone instrument remained the property of the company, and, upon nonpayment of charges due, the company had the right to suspend service and to enter upon the premises and remove the instrument, provided the removal could be accomplished without committing a trespass or breach of the peace.

█ The right of the telephone company to enter the subscriber's premises and remove its property is a license coupled with an interest, which cannot be revoked by the subscriber. When the service had been suspended for the failure of the telephone subscriber to pay for past service, I am of the opinion that the telephone company had the right, under the aforesaid rules and regulations, to enter upon the subscriber's premises and remove the telephone instrument and other equipment so long as the removal was openly accomplished and without force or violence, or any threat thereof, and when the circumstances were such as to create no apprehension of any violence on the part of the subscriber, or other person from whom the possession is being taken.

█ I have been unable to find any case that exactly parallels this one in point of fact, and none has been cited by counsel.

However, I think it clearly apparent from the adjudicated cases in South Carolina, by which I am bound, that the plaintiff has failed to make out a case of trespass on the part of defendant. It is clear that under the regulations of the defendant telephone company its license to enter upon a subscriber's premises for the purpose of removing its telephone equipment is at least equal to that of a mortgagee under a chattel mortgage where legal title does not vest in the mortgagee until after default. Childers v. Judson Mills Store Company, 189 S.C. 224, 200 S.E. 770. The right of a mortgagee, upon default by the mortgagor, has been stated by the Supreme Court of South Carolina in Willis v. Whittle, 82 S.C. 500, 64 S.E. 410, to be as follows:

"It is well settled that, after condition broken, the legal title to mortgaged chattels vests in the mortgagee. The right of the mortgagee to seize mortgaged chattels, after condition broken, is a license coupled with an interest, which cannot be revoked by the mortgagor. It is a part of the consideration of the mortgage, and to allow the mortgagor to revoke it would be a fraud upon the rights of the mortgagee, and would very much impair the value of chattel mortgages as securities. The right to seize carries with it, by necessary implication the right to do whatever is reasonably necessary to make the seizure, including the right to peaceably enter upon the premises of the mortgagor.

"There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and if the mortgagee finds that he cannot get possession without committing a breach of the peace, he must stay his hand, and resort to the law, for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it."

This language was quoted with approval in the Childers case, supra, 189 S.C. 224, at page 232, 200 S.E. 770; Justus v. Universal Credit Co., 1939, 189 S.C. 487, 1 S.E.2d 508, 510, and Soulios v. Mills Novel-

ty Co., 1941, 198 S.C. 355, 17 S.E.2d 869, 875.

The Supreme Court of South Carolina has also considered what constitutes a breach of the peace, and in the Soulios case, supra, 198 S.C. 355, at page 368, 17 S.E.2d 869, at page 875, reaches this conclusion:

"In the case of Webber v. Farmers Chevrolet Co. et al., 186 S.C. 111, 195 S.E. 139, 141, Mr. Justice Fishburne, speaking for the Court, said:

" 'We think the issue is concluded adversely to the defendants by the recent case of Lyda v. Cooper, 1933, 169 S.C. 451, 169 S.E. 236, 238. In that case, the Court held that it was a question for the jury as to whether there was a trespass and breach of the peace, where the agent of a furniture company, in repossessing property sold on the installment plan, under a conditional sales contract, finding the house of the plaintiff closed, during their absence, entered through a window, opened the doors and carried away the furniture. In that case, too, it appeared that the condition of the contract was broken, and the plaintiffs were in default in making their payments.

" 'In defining what constitutes breach of the peace, the following principles of law were quoted with approval in Lyda v. Cooper, supra:

" ' " " 'In general terms, a breach of the peace is a violation of public order, a disturbance of public tranquility, by any act or conduct inciting to violence.' Annotation to case of [State of] Kansas v. Herbert [121 Kan. 329, 246 P. 507], 48 A.L.R. 85.

" ' " " 'By "peace," as used in the law in this connection, is meant the tranquility which is enjoyed by the citizens of a * * * community, where good order reigns among its members, which is the right of all persons in political society. * * * It is not necessary that the peace be actually broken to lay the foundation of a prosecution for this offense. If what is done is unjustifiable, tending with sufficient directness to break the peace, no more is required.' " " ' "

With the right to seize chattels under a conditional sales contract or chattel mortgage for default by the buyer and the right to do whatever is reasonably necessary to make the seizure, including the right to enter on the premises, thus established, the only limitation on such rights is that a breach of the peace must not be committed.

■ It cannot be questioned but that the telephone company under its rules and regulations, upon the nonpayment of charges due, had the right to enter upon plaintiff's premises and remove its property, provided, of course, it could do so without committing a trespass or a breach of the peace. In this case did the company commit a breach of the peace? I do not think so. When defendant's employee went to plaintiff's apartment and found that he was not at home he immediately went to the main offices of the Housing Project and requested admission to plaintiff's apartment for the purpose of removing the telephone, and since the Shop Foreman readily admitted him, the employee had every right to assume that he had authority to permit him to enter plaintiff's apartment. In the circumstances, I think the company acted reasonably and within its rights, and as the telephone was removed in an orderly fashion it cannot be said that this was a breach of the peace or some act that would tend to provoke a breach of the peace.

The law must be construed reasonably and with due regard for each factual situation. The license which the defendant had to enter the premises of the plaintiff for the purpose of removing its equipment could not be revoked by the plaintiff and hence there was no necessity of securing his express permission for the exercise of the right which the defendant undoubtedly had. The only limitation upon such right is that it must be exercised without committing a breach of the peace or any act that would tend to provoke a breach of the peace. If the defendant could be held liable for a trespass under the facts of this case, then the purpose and effect of the rules and regulations, approved by the Public Service Commission, would be neutralized.

In view of the foregoing Findings of Fact and Conclusions of Law, I am of the opinion that judgment should be entered for the defendant, and

It is so ordered.