17853

STATE, Respondent, v. James EDWARDS, Jr., *et al.,* Appellants

(123 S. E. (2d) 247)

*Messrs. Jenkins & Perry,* of Columbia, and *Donald James Sampson,* of Greenville, *for appellants,*

*Messrs. Daniel R. McLeod, Attorney General,* and *J. C. Coleman, Jr.,* and *Everett N. Brandon, Assistant Attorneys General,* of Columbia, *for respondent,* ▮

December 5, 1961.

LEWIS, Justice.

The appellants, one hundred eighty-seven in number, were convicted in the Magistrate's Court of the common law crime of breach of the peace. The charges arose out of certain activities in which the appellants were engaged in and about the State House grounds in the City of Columbia on March 2, 1961. The only question involved in their appeal to this Court is whether or not the evidence presented to the trial Court was sufficient to sustain their conviction. Conviction was sustained by the Richland County Court, from which this appeal comes. While the appellants have argued that their arrest and conviction deprived them of their constitutional rights of freedom of speech and assem-

bly, guaranteed to them by both the State and Federal Constitutions, Const. art. 1, § 4; S. S. Const. Amend. 1, it is conceded in argument before us that whether or not any constitutional right was denied to them is dependent upon their guilt or innocence of the crime charged under the facts presented to the trial Court. If their acts constituted a breach of the peace, the power of the State to punish is obvious. *Feiner v. People of State of New York,* 340 U. S. 315, 71 S. Ct. 303, 95 L. Ed. 295.

It is well settled that the trial Court must be affirmed if there is any competent evidence to sustain the charges and, in determining such question, the evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the State.

The testimony discloses the following events which resulted in the arrest of the appellants and the issuance of warrants charging them with breach of the peace.

Shortly before noon on March 2, 1961, a group of approximately 200 Negro students, after attending a meeting at the Zion Baptist Church in the City of Columbia, walked in groups of approximately fifteen each from the church along public sidewalks to the State House grounds, a distance of approximately six blocks. The purpose of the movement of the group to the State House was to parade about the grounds in protest to the General Assembly and the general public against the laws and customs of the State relative to segregation of the races, such demonstration to continue until, as the testimony shows, their conscience told them that the demonstration had lasted long enough. The General Assembly was in session at the time.

As they reached the State House grounds, the group was met by police authorities of the State and the City of Columbia. After a brief conference between their leader and police officers, the group proceeded to parade about the State House grounds. They continued to parade around the State House for approximately forty-five minutes during which

time they met with no interference. During this forty-five-minute period a crowd, evidently attracted by the activities of the paraders, began gathering in the area in front of the State House, known as the "horseshoe", blocking the lanes for vehicular traffic through such area and materially interfering with the movement of pedestrian traffic on the sidewalks in the area and on sidewalks immediately adjacent. Vehicular traffic on the adjacent city streets was noticeably and adversely affected by the large assemblage of paraders and the crowd which had overflowed the horseshoe area into the adjacent streets.

The traffic situation can best be understood in relation to the area involved. Columbia is the State Capital. Main and Gervais Streets in Columbia intersect in front of the State House. Gervais Street runs in an east-west direction, along the northern side of the State House grounds. Main Street, running north and south, intersects Gervais Street in front of the State House, where it dead-ends. The area referred to as the "horseshoe" is in effect a continuation of Main Street into the State House grounds. It is about ¼ block in length and about the width of Main Street. Situated at the center of the entrance to the "horseshoe" is a monument, with space on each side for vehicular traffic to enter and leave the area. It is reserved for parking of vehicles and, on the occasion in question, was filled with automobiles. It is a violation of law to block or impede traffic in the area. Section 1-417, Cumulative Supplement, 1952 Code of Laws. Sidewalks are located around the area for use by pedestrians.

The intersection of Main and Gervais Streets in front of the State House in Columbia is, by common knowledge, one of the busiest intersections in the State of South Carolina, both from the standpoint of vehicular and pedestrian traffic.

On the occasion in question, in addition to the approximately 200 paraders in the area, there had gathered approximately 350 onlookers and the crowd was increasing. With the paraders and the increasingly large number of onlookers

congregated in the above area seriously affecting the flow of pedestrian and vehicular traffic, the officers approached the admitted leader of the paraders and informed him that the situation had reached the point where the activities of the group should cease. They were told through their leader that they must disperse within fifteen minutes. The parade leader, accompanied by the police authorities, went among the paraders and informed them of the decision and orders of the police. The leader of the group refused to instruct or advise them to disperse but instead began a fervent speech to the group and in response they began to sing, shout, clap their hands and stamp their feet, refusing to disperse. After about fifteen minutes of this noisy demonstration, the appellants, who were engaging in the demonstration, were arrested by State and City officers and charged with the crime of breach of the peace. Upon the trial, all of the appellants were identified as participants in the parade and activities out of which the charge arose.

The warrants issued against appellants charge that they "on March 2, 1961, on the State Capitol grounds, on adjacent sidewalks and streets, did commit a breach of the peace in that they, together with a large group of people, did assemble and impede the normal traffic, singing and parading with placards, failed to disperse upon lawful orders of police officers, all of which tended directly to immediate violence and breach of the peace in view of existing conditions."

"Breach of the peace is a common law offense which is not susceptible of exact definition. It is a generic term, embracing 'a great variety of conduct destroying or menacing public order and tranquility.' *Cantwell v. State of Connecticut,* 310 U. S. 296, 60 S. Ct. 900, 905, 84 L. Ed. 1213, 128 A. L. R. 1352." *State v. Randolph,* 239 S. C. 79, 121 S. E. (2d) 349, 350.

The general definition of the offense of breach of the peace approved in our decisions is that found in 8 Am. Jur. 834, Section 3 as follows: "In general terms, a breach of

the peace is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence * * *, it includes any violation of any law enacted to preserve peace and good order. It may consist of an act of violence or an act likely to produce violence. It is not necessary that the peace be actually broken to lay the foundation for a prosecution for this offense. If what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required. Nor is actual personal violence an essential element in the offense. * * *"

"By 'peace,' as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality or community where good order reigns among its members, which is the natural right of all persons in political society."

See: *Soulios v. Mills Novelty Co.,* 198 S. C. 355, 17 S. E. (2d) 869; *State v. Langston,* 195 S. C. 190, 11 S. E. (2d) 1; *Childers v. Judson Mills Store Co.,* 189 S. C. 224, 200 S. E. 770; *Webber v. Farmers Chevrolet Co.,* 186 S. C. 111, 195 S. E. 139; *Lyda v. Cooper,* 169 S. C. 451, 169 S. E. 236.

In determining whether the acts of the appellants constituted a breach of the peace, we must keep in mind that the right of the appellants to hold a parade to give expression to their views is not in question. They were not arrested for merely holding a parade, nor were they arrested for the views which they held and were giving expression. Rather, appellants were arrested because the police authorities concluded that a breach of the peace had been committed.

The parade was conducted upon the State House grounds for approximately forty-five minutes. It was not until the appellants and the crowd, attracted by their activities, were impeding vehicular and pedestrian traffic upon the adjacent streets and sidewalks that the officers intervened in the interest of public order to stop the activities of the appellants at the time and place. Notice was given

to appellants by the officers that the situation had reached the point where they must cease their demonstration. They were given fifteen minutes in which to disperse. The orders of the police officers under all of the facts and circumstances were reasonable and motivated solely by a proper concern for the preservation of order and prevention of further interference with traffic upon the public streets and sidewalks. The appellants not only refused to heed and obey the reasonable orders of the police, but engaged in a fifteen-minute noisy demonstration in defiance of such orders.

The acts of the appellants under all the facts and circumstances clearly constituted a breach of the peace.

Affirmed.

TAYLOR, C. J., and OXNER, LEGGE and MOSS, JJ., concur.