433 So.2d 847 (1983)
Arthur ST. JULIEN, et al., Plaintiffs-Appellants,
v.
SOUTH CENTRAL BELL TELEPHONE CO., et al., Defendants-Appellees.
No. 83-66.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
Rehearing Denied July 14, 1983.
*848 Sylvia Cooks, Lafayette, for plaintiffs-appellants.
Landry, Watkins & Bonin, Anne G. Stevens, New Iberia, for defendants-appellees.
Before DOUCET, YELVERTON and KNOLL, JJ.
DOUCET, Judge.
Plaintiffs filed suit alleging that defendants violated their right to privacy when an employee of South Central Bell, assisted by an apartment complex employee, entered their apartment without consent or authority and wrongfully seized telephone units. From an adverse judgment, plaintiffs appeal. We reverse in part and affirm in part.
On October 15, 1981 plaintiffs, Arthur J. St. Julien and Charlotte B. St. Julien, occupied an apartment unit by virtue of a lease at Bridgeway Apartments in St. Martinville, Louisiana. A representative of South Central Bell Telephone Company, defendant herein, appeared at the manager's office of the apartments, requesting a key to the unit occupied by the plaintiffs. A secretary employed by the apartments, Sandra Davis, accompanied the telephone company employee to the unit. Both the telephone company employee and the secretary entered into the St. Julien's apartment by use of a key allegedly in the possession and control of Tilden Bonin, d/b/a Bridgeway Apartments, Inc., also named defendant herein. Plaintiffs were not present at the time and did not consent to the entry at any time.
Plaintiffs returned home on this day only to discover that an intruder had entered and searched their apartment. There were *849 no notices posted by the South Central Bell employee or the apartment employee following the entry. Plaintiff determined, on closer inspection, that their apartment had been searched and the telephones located in the bedroom closet had been removed. Through further investigations plaintiffs discovered that it was the result of the action of a South Central Bell Telephone Company employee and an apartment employee. The equipment removed was owned by the telephone company and leased to the St. Juliens pursuant to a subscription agreement.
Defendant Tilden Bonin admitted in answer that a representative of South Central Bell was granted permission by the owner of the apartment and entered the apartment rented to Arthur St. Julien and removed their telephones. The Telephone Company sought to justify its action relying in part on its tariff filed with the State and the fact that plaintiff had failed to pay a past due telephone bill. At the conclusion of the plaintiff's case in chief the trial judge dismissed the action against Tilden Bonin d/b/a Bridgeway Apartments, Inc., finding that plaintiffs had failed to establish a connection between Bridgeway Apartments, said defendant, and the invasion. At the conclusion of the trial, the trial judge dismissed plaintiff's demands and granted defendant's reconventional demand based on the past due telephone bill in the sum of $58.88. This appeal followed.
Appellants assign two specifications of error: (1) the trial judge erred in failing to find that defendants committed a tortious act for which recovery is allowed under the laws of this state and (2) the trial judge erred in dismissing this suit against Tilden Bonin d/b/a Bridgeway Apartments, Inc.
Appellee contends that a tariff, required by law to be filed, grants the Telephone Company the right to enter a subscriber's premises and remove its property without consent or judicial authorization. Plaintiffs contend that it was never the intent of the legislature or the Public Service Commission, in accepting tariffs, to grant them the same status as statutory law, for such would be a violation of plaintiff's constitutionally protected rights to privacy and procedural due process, under color of state law.
For reasons to follow, we find that South Central Bell Telephone Company invaded plaintiffs' right to privacy entitling them to recovery of damages.
In Van Wren v. Hugh Flynn, 34 La.Ann. 1158 (1883) the Louisiana Supreme Court observed that invasion of a man's house is a gross outrage "for which courts of justice must either grant redress or sanction the personal exaction of satisfaction by violence." However, prior to 1890, courts did not recognize a distinct right to privacy per se but rather gave effect to such rights under the auspices of principles of property, contracts, libel, assault, confidential relations, etc. Comment, Injunctive Protection of Personal InterestA Factual Approach, 1 La.L.Rev. 665 (1939), Pound, Revival of Comparative Law, 5 Tul.L.Rev. 1, 4 (1930). It was not until the publication of a law review article in 1890, by Warren and Brandeis (later Justice Brandeis), that the right to privacy was introduced and defined as an independent "right to be let alone" and distinctive principles upon which it is based were formulated. Warren & Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193 (1890). See also: Prosser, Privacy, 48 Cal.L.Rev. 383 (1960); Lusky, Invasion of Privacy: A Clarification of Concepts, 72 Colum.L.Rev. 693 (1972), Comment, The Emerging Tort of Intrusion, 55 Iowa L.Rev. 718 (1970); Annot. The Right to Privacy, 14 A.L.R.2d 750; Annot. Uninvited Entry as Invasion of Privacy, 56 A.L.R. 3rd 434; Comment, Invasion of PrivacyUnreasonable IntrusionA Weapon Against Intrusions Upon our Shrinking Right of Privacy, 47 Notre Dame L.Rev. 1067 (1972).
In Love v. Southern Bell Telephone and Telegraph Co., 263 So.2d 460, 56 A.L.R.3d 424 (La.App. 1st Cir.1972) writ refused 262 La. 1117, 266 So.2d 429 (1972), the court, quoting in part from Hamilton v. Lumbermen's Mutual Cas. Co., 82 So.2d 61 (La.App. 1st Cir.1955), reviewed the evolution of the right to privacy as follows:

*850 "What is the right of privacy?
"It has been defined in many different ways, but each definition conveys one meaning.
"It has been defined as `the right to be let alone' and as `the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity.' According to another definition, it is `the right to live without unwarranted interference by the public about matters with which the public is not necessarily concerned.' (See: Banks v King Features Syndicate, DC NY, 1939, 30 F Supp 352; Brents v Morgan, 1927, 221 Ky 765, 299 SW 967 [55 ALR 964]; Jones v Herald Post Co., 1929, 230 Ky 227, 18 SW2d 972; cited in 138 ALR 24; 77 CJS [Right of Privacy, § 1, p] 396, n[ote] 1.)"
. . . . .
"Louisiana also recognizes this right.
"In 138 ALR 28, it is stated:
"`... the preponderance of authority supports the view that, independently of the common rights of property, contract, reputation, and physical integrity, there is a legal right called the right of privacy, the invasion of which gives rise to a cause of action.'
. . . . .
"The first case in which Louisiana recognized and enforced what was apparently essentially the right of privacy is Denis v Leclerc, 1811, 1 Mart, OS, 297.
"In the Leclerc case, this Court affirmed the lower Court's injunction of the publication by the defendant of a private letter written by the plaintiff and also affirmed the judgment for contempt incurred by the defendant for placing an advertisement in the paper inviting the public to come to his office and view the letter.
"Of course, in the Leclerc case, as in the early English cases, the right of privacy was enforced as a quasi-property right, citing the old English case of Pope v Curl, 2 Atk 342, 26 Eng Rep 608, 1741, mentioned supra herein. (See: Comment: 1 Louisiana Law Review 665, 680.)
"The Leclerc case is discussed as a forerunner of the modern concept of the right of privacy in a discussion by Professor Dale E. Bennett to be found in 1 Louisiana Law Review 665, at page 680. An author who agrees with Professor Bennett states, in 21 Tulane Law Review 289, at page 291:
"`The right of privacy has long been established in Louisiana. As early as 1811, the right was invoked although not specifically described as such. Denis v Leclerc, 1811, 1 Mart OS, [La] 297; ...' (Emphasis supplied.)"
The Right of Privacy in Louisiana is the subject of an article found at 28 LLR 469. After reiterating the various definitions as quoted above from Hamilton, the author states: (28 LLR 469, 470)
"These definitions because of their very broad language are of little, if any, assistance to a court in resolving a case involving the right of privacy. In order reasonably to limit the area of protection afforded under the right of privacy, the courts in Louisiana, either expressly or tacitly, have distinguished between `actual' and `actionable' invasions of the right of privacy with legal redress being granted only when the invasions are deemed to be actionable. Since this distinction is the crucial determinate of whether recovery will be allowed, much discussion will be devoted to the test used by the courts to ascertain whether certain conduct is an actionable invasion of the right of privacy. As employed by the courts, the word `actual' describes conduct for which no recovery will be granted even though such conduct may seem to invade the right of privacy as that right has been so broadly defined.
"It is evident that malicious intent is not necessary in order to have an actionable invasion of the right or privacy, and that truth and the absence of malice are not defenses to such an action. In determining the criterion for *851 liability the courts have looked to what was done rather than the precise motives which accompanied the acts. A few Louisiana decisions have referred specifically to section 867 of the American Law Institute's Restatement of Torts as the test to be used in determining whether certain conduct constitutes an actionable invasion of the right of privacy. Section 867 provides:
"`A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other.'"
We do not subscribe to defendants' argument that Hamilton and the authorities cited therein are inapposite because they relate to "publication concerning the manner in which a man lives, ...", etc. Our courts have recognized that physical intrusions are actionable if conducted in an illegal manner. Souder v Pendleton Detectives, Inc., 88 So.2d 716 (1st La.App., 1956). Further, it is the established law of this state that CC Art 2315 "is broad in its scope and contemplates redress to all who suffer injury as a consequence of an offense or quasi offense, including the right to recover compensatory damages though unaccompanied by physical injury. Quina v Roberts, 16 So.2d 558 (OrlLaApp, 1944); Graham v Western Union Tel. Co., 109 La 1069, 34 So 91; Tuyes v Chambers, 144 La 723, 81 So 265.
In Love, a company and its supervisory employees who, with the aid of a locksmith, entered the plaintiff employee's housetrailer (after receiving no response to their knocks on the door) one morning when he failed to report to work at the customary time and found the worker ill with whiskey and beer cans surrounding him. The employee was subsequently fired and brought suit for invasion of privacy. The court held the defendant's physical intrusions constituted an actionable invasion of privacy and awarded damages.
This court, in Pack v. Wise, 155 So.2d 909 (La.App. 3rd Cir.1963), through Judge Tate, stated: "Whether or not a debt is justly due, the law recognizes a right in a debtor to be free from unreasonable coercion and also to be free from unreasonable violations of his right to privacy in his personal affairs, and the debtor is entitled to general and special damages in tort for violations of his rights in these regards. Tuyes v. Chambers, 144 La. 723, 81 So. 265; Quina v. Roberts, La.App.Orl., 16 So.2d 558."
In a case factually similar to the present, damages were awarded for invasion of privacy in Fassitt v. United T.V. Rental, Inc., 297 So.2d 283 (La.App. 4th Cir.1974) where the lessor of phonographic equipment entered plaintiffs home to repossess the leased property, relying on contractual authority to do so. It made no difference that plaintiffs were absent at the time of repossession or that their property right was not one of full ownership.
The Louisiana Constitution adopted in 1974 specifically recognizes the right to privacy, stating: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy..." La. Const. of 1974, Art. 1, § 5; Parish National Bank v. Lane, 397 So.2d 1282 (La.1981). It has been stated that this right to privacy is intended to protect against private as well as governmental conduct. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1 (1974). "The right of privacy protects varied interests from invasion. Among the interests protected is the individual's right to be free from unreasonable intrusion into his seclusion or solitude, or into his private affairs. This includes the right to be free of unwarranted intrusion into his own quarters." Parish National Bank v. Lane, supra.
The U.S. Constitution also recognizes an individual's right to privacy. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Various constitutional guarantees create zones of privacy. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. *852 1678, 14 L.Ed.2d 510 (1965). The "sanctuary of the home" was recognized in Rowan v. U.S. Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) wherein it was stated that "The ancient concept that `a man's home is his castle' into which `not even the king may enter' has lost none of its vitality..." The fundamental right to be free from unwanted intrusions into the privacy of one's home was also recognized in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). The right to privacy embodied in the Fourth Amendment is, of course, applicable to the states via the due process clause. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). As was noted in Mapp, relegating a citizen to the remedy of an action for trespass where his privacy was invaded without warrant is often an onerous and indeed often illusory remedy with meager relief even if the plaintiff prevails. 367 U.S. at 670, 81 S.Ct. at 1699.
Furthermore, defendant's actions are violative of federal procedural due process rights. As noted in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) "`Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' Baldwin v. Hale, 1. Wall. 223, 233, 17 L.Ed. 531." The Fourteenth Amendment's protection of "property" has been read broadly to extend to any significant property interest including possessory interests. Fuentes v. Shevin, supra. Waiver of such due process rights must be made voluntarily, intelligently, and knowingly at least where the contract is one of adhesion and the parties possess unequal bargaining power. D.H. Overmyer Co., Inc. of Ohio v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); Fuentes v. Shevin, supra. Courts will not presume acquiescence in the loss of fundamental rights. Ohio Bell Tel. Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). Indeed, in the civil no less than the criminal area, "courts indulge every reasonable presumption against waiver." Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Fuentes v. Shevin, supra. The method of repossession employed by the defendant herein, without notice or hearing and without opportunity for judicial supervision or prompt redress, violates even the minimal due process safeguards set forth in Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).
Appellee South Central Bell Telephone Co. relies on the General Subscriber Services Tariff, filed with the Louisiana Public Service Commission, which authorizes a company employee to enter a customer's dwelling to remove equipment upon termination or cancellation of service. While the Louisiana Public Service has broad power to adopt reasonable and just rules, regulations and orders affecting the service and operation of telephone utilities, La. Const. Art. 4, § 21, La.R.S. 45:1166, South Central Bell Tel. Co. v. La. Public Service Com'n., 352 So.2d 999 (La.1977), we do not believe the mere filing of a tariff by a utility can justify actions otherwise prohibited by law. Rather, we find that the tariffs relied on are subordinate to constitutional provisions. Assuming, arguendo, that the tariffs were controlling, there is nothing in the language of such regulations which grants the right to enter a subscriber's premises in his absence and remove equipment without consent.
Appellee has cited to this court and the trial court the cases of Plate v. Southern Bell Tel. & Tel. Co., 98 F.Supp. 355 (E.D.S. C.1951) and Peace v. Southern Bell Tel. & Tel. Co., 208 F.2d 901 (4th Cir.1953) in support of its position. In Plate, the plaintiff, a telephone "subscriber, was several months behind in payment of his bill and an employee of the telephone company, relying on the utility's tariff filed with the South Carolina Public Service Commission, after previous notice to the customer, requested entry into the plaintiff's apartment from an apartment complex employee, which was granted, entered and removed company equipment while the subscriber was absent. Suit followed. The District Court, applying the substantive law of South Carolina, held *853 that the telephone company did not commit an actionable trespass. In Peace, another case of South Carolina origin from the 1950's, the court applied the law set forth in Plate to similar facts. Of course, neither case is binding on this court and for reasons aforementioned, we reject their reasoning therein as inconsistent with Louisiana law and modern theories relative to the right to privacy, trespass, and procedural due process.
Appellee South Central Bell also asserts that the St. Juliens consented to the telephone company entering their apartment in their absence when they initially availed themselves of the defendant's services. However, no telephone subscription agreement between the St. Juliens and South Central Bell was entered into evidence. The appellee made no showing whatsoever that the St. Juliens ever voluntarily, intelligently, and knowingly granted the right to enter their home while they were away and search for and take a phone. Nor is there even the slightest suggestion that such an agreement would be the product of meaningful bargaining and subsequent meeting of the minds. Even if defendant had satisfied the aforesaid evidencing requirements, their position would likely fail. "Public policy cannot condone the use in a sale or lease contract of a provision irrevocably authorizing entry into a debtor's or lessee's home without judicial authority or without the owner's consent at the time of entry. We decline to construe the quoted provision, incorporated into a printed form contract as a necessary condition of the agreement, as irrevocable permission to enter a private home at any time, day or night, occupied or unoccupied, under any circumstances. Law and order cannot allow such a construction, which would tend to encourage breaches of the peace." Fassitt v. United T.V. Rental, Inc., supra.
The present case is notably different from Parish National Bank v. Lane, supra, where the Supreme Court rejected defendant's invasion of privacy claim. In Lane the plaintiff bank obtained a judgment against defendant on a promissory note and, upon defendants failure to pay the judgment, defendant filed a motion for a judgment debtor examination. The examination revealed defendant's homesite consisted of 14.6 acres of land with an unknown value. The bank filed a motion to inspect and view the property to ascertain any non-exempt value in the property available for seizure, pursuant to LSA-C.C.P. Art. 2451 and 1462, which was granted. The Supreme Court upheld the bank's right to utilize said statutes governing discovery in aid of execution as a reasonable interference with defendant's privacy interest since the bank had a right to seize and appraise the property which the debtor could place no value on and the defendant was entitled to seek any protective order establishing the conditions and scope of the inspection. Here, there had been no judicial determination of the defendant's claim, no notice to the alleged debtor and, accordingly, no opportunity for the plaintiffs to safeguard their right to privacy.
With regard to appellant's second assignment of error, we find no error in the trial judge's finding that plaintiffs failed to establish a link between Tilden Bonin, part owner of the apartment complex, and the alleged tort committed by the apartment worker, apparently employed by an apartment management entity. Moreover, this assignment of error has not been sufficiently argued so as to entitle it to review.
Our law allows nominal damages for every trespass and compensatory damages include awards for mental anguish and embarassment caused by the intentional violation of property rights even if the violation causes no pecuniary damage. Fassitt v. United T.V. Rental, Inc., supra; Pack v. Wise, supra; Taylor v. Action Household Rentals, Inc., 351 So.2d 865 (La.App. 2nd Cir.1977); Grandeson v. International Harvestor Credit Corp., 223 La. 504, 66 So.2d 317 (1953). Plaintiffs testified as to their fright and mental distress when they discovered someone had entered their home during their absence without their knowledge or consent. They no longer felt secure in their home. Mr. St. Julien placed a chair *854 next to the entrance each night before retiring and kept a pistol on a table next to his bed despite their child's fear of guns. Defendants made no attempt to controvert this. We believe an award of $1,000.00 will adequately compensate plaintiffs for their suffering.
For the reasons assigned hereinabove, the portion of the trial court judgment rejecting the plaintiff's claim for invasion of privacy is reversed. It is hereby ORDERED, ADJUDGED, AND DECREED that there be judgment in plaintiff's favor in the sum of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS. In all other respects, the judgment appealed is affirmed. Appellee, South Central Bell Telephone Company is cast with all court costs at the trial and appellate levels.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
YELVERTON, Judge.
I concur in the finding that South Central Bell Telephone Company committed an actionable invasion of privacy. I also concur in the award of damages.
I dissent from the dismissal of the suit as to defendant Tilden Bonin, d/b/a Bridgeway Apartments, Inc. In my opinion his liability was clearly established. He admitted that he was an owner of the apartments. The evidence shows that Sandy Davis was the manager of the apartments and that it was she who provided the passkey for entry into plaintiffs' apartment. In fact, she opened the door herself and went inside the apartment with the telephone company representative and stayed there while he removed the telephones. Bonin testified that Sandy Davis was in possession of passkeys, that she worked in the office, and that she collected the rent for him and the other owners. I find no evidence in the record that she was employed by a management entity. She was the apartment house manager in the employ of the owners. She had no authority to permit entry by the telephone company into plaintiffs' apartment. Under these circumstances I would find Tilden Bonin liable.
YELVERTON, J., concurs in part and dissents in part and assigns written reasons.