CASE No. 1154.

STATE v. SIMS.

1. Where a riot is committed in doing an unlawful act it is not necessary that the indictment should charge that the offense was done *in terrorem populi.*
2. The Court of General Sessions has jurisdiction of riots only when they are of a high and aggravated character, but this is sufficiently charged in an indictment which alleges the riot to have consisted in assault and battery on peace officers.
3. *State v. Simmons,* 4 *S. C.* 75, and *State v. McKettrick,* 14 *S. C.* 346, explained and reconciled.
4. Under the authority given to a municipal corporation to make all such rules as may be necessary to good order and public peace, the power to appoint policemen is implied; and the appointment of such officers may be shown by their own testimony and corroborating circumstances.
5. Under the circumstances of *this* case, policemen were authorized to arrest without warrant, soon after its occurrence, parties guilty of riotous conduct, although not committed in view of the officers.

6. Defendant testified that at the disturbance, he had not made use of a certain expression, and one M., a witness, testified that he was not present. *Held*, that the defendant and M. might be contradicted, as to these matters, by the State in reply, although they had not been advised of time, place and person.

7. The admission of cumulative evidence in reply is within the discretion of the trial judge.

8. A charge upon facts, on which the jury are not called upon to pass, is not in violation of the constitution.

9. This court cannot declare error in the refusal of the Circuit judge to permit more than one counsel for defendants to cross-examine a witness for the State, although the several defendants are represented by different counsel.

Before ALDRICH, J., Richland, March, 1881.

This was an indictment against Thomas Sims, Jupiter Mitchell, Joseph Thomas and William Mikell. Mitchell was acquitted, and the other three convicted. They appealed.

The indictment in its first count charged that the defendants "with force and arms at Columbia, in the county and State aforesaid, unlawfully, riotously and routously, did assemble and gather together to disturb the peace of the said State; and being so then and there assembled and gathered together, in and upon one E. R. Warner, a peace officer and policeman of the city of Columbia, in the county and State aforesaid, and Starling Strickland, a peace officer and policeman of the city of Columbia, in the county and State aforesaid, and in and upon one W. W. Higby, a peace officer and policeman of the city of Columbia, in the county and State aforesaid, in the peace of God and the said State then and there being, then and there unlawfully, riotously and routously, did make an assault; and them the said E. R. Warner, the said Starling Strickland, and the said W. W. Higby, then and there unlawfully, riotously, and routously, did beat, bruise, and wound, and ill-treat, and other wrongs to the said E. R. Warner, the said Starling Strickland, and the said W. W. Higby, then and there unlawfully, riotously, and routously, did to the great damage of the said E. R. Warner, the said Starling Strickland, and the said W. W. Higby, in contempt and defiance of the laws, to the evil example of all others in like case offend-

ing against the form of the act of the General Assembly in such case made and provided, and against the peace and dignity of the State."

The second count charged the defendants with an assault upon these same officers, naming them as above, and that the defendants "from them the said E. R. Warner, &c., and out of their custody and against the will of them, the said E. R. Warner, &c., unlawfully, and forcibly, and riotously, and routously, did rescue and put at large one Joseph Thomas, then and there being under arrest and in the custody of the said peace officers and policemen aforesaid, and the said Joseph Thomas himself out of the custody of the said peace officers and policemen aforesaid, and against their will, unlawfully, and forcibly, did rescue and put at large, against the form of the act," &c.

Other facts are stated in the opinion.

*Mr. Allen J. Green,* for appellants.

*Mr. Solicitor Bonham,* contra.

March 7th, 1882. The opinion of the court was delivered by

SIMPSON, C. J. At the March Term, 1881, of the Court of General Sessions for Richland county, the defendants were tried and convicted on an indictment containing two counts; the first for riot, and the second for rescue. Allen J. Green, Esq., appeared for defendant Sims, and John T. Sloan, Esq., for the other two. The prisoners were tried together and the presiding judge ruled that one attorney should alone conduct the cross-examination for all of the defendants.

The riot charged in the first count of the indictment was not alleged to have been committed *in terrorem populi,* nor was it charged as of a high and aggravated nature.

The defendants were found " guilty." Motions were made in their behalf for a new trial and in arrest of judgment. First. For a new trial for defendant Sims, because his Honor refused to allow his counsel to cross-examine witnesses for the prosecution. And

for all of the defendants : 1. Because his Honor erred in receiving testimony to contradict defendants and defendants' witnesses; the solicitor having failed to lay the foundation therefor according to rules of evidence. 2. Because his Honor erred in allowing the State to introduce cumulative evidence in reply. 3. Because there was not sufficient evidence to connect Sims with the second count of the indictment. 4. Because his Honor erred in charging the jury that the arrest laid in the second count of the indictment was a lawful arrest—the arrest having been made by a policeman without warrant, and at a time when there was no disturbance.

For arrest of judgment : 1. Because the first count in the indictment was fatally defective, in that it did not allege *terrorem populi* and that the offense was of a high and aggravated nature. 2. Because the court had no jurisdiction of the first count; and, 3. Because the arrest which is the foundation of the second count, to wit, rescue, was unlawful and that his Honor should have so held. These motions were refused, and the defendants, appeal on the grounds above stated and on the further ground : That his Honor erred in charging the jury that the only question for them was, did the defendants rescue the prisoner in a riotous and tumultuous manner, saying : " Has the evidence convinced your minds that there was a riotous rescue of prisoners ? If so, your verdict must be guilty."

The facts of the case are briefly as follows : The defendant, Thomas, created some disturbance of a violent and disorderly character at Griffin's store in the city of Columbia. Griffin sent for the police, and very soon Warner, Strickland and Higby appeared; by this time the disturbance had ceased, though Thomas was still present and drunk. Griffin pointed out Thomas to the peace officers as the party who had created the disturbance and ordered them to arrest him. The officers attempted the arrest, but Thomas resisted, a scuffle ensued and a crowd collected. Thomas was tied, but finally escaped, as it was alleged, by the assistance of the defendants. The arrest was made by Warner, Strickland and Higby, as policemen under the city authorities, and was made without a warrant.

The verdict of the jury has settled the facts. First. That the

defendants did take from the policemen the prisoner, Thomas, in a violent and tumultuous manner; and, second, after being assembled and gathered together, they did riotously and routously assault, beat, wound and ill-treat the said policemen. The indictment charged these' two acts and the jury have said guilty. This verdict covers both charges, and we must regard both established as matter of fact. Now, the important question in the case is, do these facts establish as matter of law the offenses of riot and rescue. After considering these questions we will then look into the other exceptions.

It is urged in arrest of judgment: 1. That riot has not been established, because no such offense is charged, the indictment being defective in that it failed to allege the offense *in terrorem populi.* If there could be no riot in the absence of proof of *terrorem populi* as an independent fact, then this objection would be fatal. But Lord Holt has given a distinction, as is said, in *Commonwealth* v. *Runnels et al.,* 10 *Mass.* 519, founded in good sense, between those indictments in which the words *in terrorem populi* are essential and those wherein they may be admitted. He says that in indictments for that species of riot which consists in going about armed and without committing any positive act, the words aforesaid are necessary, because the offense consists in terrifying the people, but in riots in which an unlawful *act* is committed the words are useless. 11 *Mod.* 116.

According to Blackstone, a riot is where three or more actually do an unlawful act of violence, or if they beat a man, or do any other unlawful act with force and violence. * * * 4 *Bl. Com.* 146; *State* v. *Brooks,* 1 *Hill* *362. The essence of the riot in some cases is the *terrorem populi.* In such cases it is necessary to aver that fact. In others the essence may be the committing *some unlawful act* with violence, or in a violent and tumultuous manner; in such cases it seems unnecessary that the aforesaid words should be used. Mr. Greenleaf (3 Vol., Sec. 219,) says: If the indictment charges the actual perpetration of a deed of violence, such as assault and battery, &c., it is not necessary to allege or prove that it was done to the terror of the people, but proof of all the other circumstances alleged will support the indictment without proving directly any terror.

In this case the charge is the commission of an assault and battery on peace officers unlawfully, riotously and routously. We think this was sufficient, and therefore the exception of appellant as to this point is untenable.

2. Appellants except to the indictment as to the first count, because it does not charge the offense as of a "high and aggravated character," and, therefore, no offense is charged and proved over which the Court of General Sessions had jurisdiction.

In the case of the *State* v. *McKettrick*, 14 *S. C.* 346, it was held that in cases of assaults and batteries it was necessary that the indictment should contain an allegation of facts and circumstances showing that the offense was of a high and aggravated character, or some distinct charge of that kind, in order to give the Court of General Sessions jurisdiction. This applies to riots as well as to assaults and batteries. Section 11 of Chapter XXV., General Statutes, page 195, defining the criminal jurisdiction of trial justices, gives trial justices jurisdiction of all rioters * * * in almost the same language as Section 10 does of assaults and batteries, and declares the punishment of such offenders, when not of a high and aggravated character, is within the limit prescribed for trial justices, to wit, by fine not exceeding $100 and imprisonment in the jail or workhouse not exceeding thirty days.

The indictment charges the riot to consist in an assault and battery by three or more persons, upon peace officers, riotously and routously, and though it does not distinctly allege that this assault and battery was committed upon these peace officers while in the discharge of their duty, yet such was the testimony, and such may well be regarded after verdict as the legal intendment of the indictment. A charge of that character upon peace officers performing their legitimate duty, would be of a high and aggravated character.

There is no conflict between the case of the *State* v. *Simmons*, 4 *S. C.* 76, and the case of *McKettrick*, as some seem to suppose. Previous to the case of the *State* v. *Simmons*, an act had been passed conferring exclusive jurisdiction on the City Court of Charleston in all offenses less than felony. This *act* in that case was declared unconstitutional, because in violation of Section 18,

*)*

Article IV., which gives exclusive jurisdiction to the Court of General Sessions in all criminal cases which shall not be other-wise provided by law. The court in the case of the *State* v. *Simmons* very properly held, that the *legislature* had no power in the face of this section of the constitution to divest the Court of Sessions of jurisdiction in any criminal case. It might confer concurrent jurisdiction on other courts, but not exclusive, as it attempted to do in the act referred to on the City Court.

But this does not apply to the *exclusive* jurisdiction conferred on trial justices in assaults and batteries and other breaches of the peace, as decided in the case of the *State* v. *McKettrick*, because that exclusive jurisdiction does not come from an act of the legislature, but it comes from the constitution itself. Section 19, Article I., provides, that all offenses less than felony, in which the *punishment does not exceed a fine of one hundred dollars or imprisonment for thirty days, shall be tried summarily before a justice of the peace, or other officer authorized by law, on information under oath without indictment or intervention of a grand jury,* &c.

Assaults and batteries and other breaches of the peace, rioters, &c., not of a high and aggravated nature, can only be punished by fine not exceeding one hundred dollars and imprisonment not exceeding thirty days. *Gen. Stat.*, Ch. XXV., §§ 10 and 11. If so, under Section 19, Article I., they shall be tried by justices of the peace, or other officer authorized by law, to wit, trial justices, summarily and without the intervention of a grand jury. This makes the jurisdiction in such cases exclusive. It is derived, not as the City Court of Charleston, from an act of the legislature, and therefore unconstitutional, but from the constitution itself, therefore legal. There is not the shadow of a conflict between the two cases.

The next exception raises the question, whether there was error in holding as matter of law that the police officers had authority to arrest as they did, without warrant and after the disturbance had ceased. The exception raising this question is in the following language: "Because his Honor erred in charging the jury, that the arrest laid in second count of indictment was a lawful arrest—the arrest having been made by the police

without warrant and at a time when there was no disturbance." This exception admits that the arrest was made by the police, to wit, by persons acting as policemen. But the legality of the arrest is questioned upon the grounds that it was made without warrant and when there was no disturbance. Whether the city authorities had the power to appoint policemen or peace officers is not raised in this exception, or in any other, nor is it denied that these men were appointed and were then on duty. If it was necessary to decide this question, we would say that the city authorities certainly had such power under the amendment to the charter, March 2d, 1871, § 10, (14 *St.* 572.) The power therein granted to make all such rules as may tend to preserve the quiet, peace, safety and good order of the inhabitants, carried with it the power to provide the necessary machinery to execute. The end warranted the necessary means, the only limitation being, " not inconsistent with the laws of the land."

When a statute gives jurisdiction over an offense, it impliedly gives power to apprehend the offender. 4 *Bl. Com.* 290, note. So, here, where the amended charter, 1871, gave the power to make *all* such rules as might be necessary to good order and public peace, it impliedly gave power to provide the means of enforcement, by the apprehension and punishment of the offenders. The fact that these men, Strickland and the others, were on duty, with the insignia of office and the badge of authority visible on their persons, accompanied with their own testimony as to their appointment, is sufficient evidence that the city authorities had exercised the power to make rules for the good order of the city and had provided the machinery for arrests, &c. Under these circumstances we must assume that they were legally on duty on this occasion as peace officers, and that they had all the powers which ordinarily belong to such officers.

Is it legal for peace officers to arrest for offenses less than felony, without warrant and when there is no disturbance in view? As a general rule it is not, but we find the following in *East P. C.* 306 : " Lord Hale and some later authorities have holden that such arrests may be made upon the charge of another, though the affray be over, for the purpose of bringing the party before a justice to find sureties, or for appearance. But

where time and circumstances will admit of it, the better way is to apply for a warrant. It seems clear, however, that if one menaces another to kill him, upon complaint thereof to a constable forthwith, he may, in order to avoid present danger, arrest the party to detain him till he can conveniently bring him to a justice of the peace. 2 *Hale P. C.* 88. But this power is grounded on the duty of the officer to prevent a probable felony, and must be governed by the same rules which apply to that case; though Dalton extends it even to the prevention of a battery. *Dalt.*, Ch. CXVI., § 3." In 1 *Russ. Cr. & M.*, Ch. X., § 2, p. 771, it is stated "that in all cases of misdemeanor a peace officer may apprehend the party while committing the offense, and it should seem upon fresh and immediate pursuit in some instances." See, also, *Rosc. Cr. Ev.* 256.

It seems in this case that Thomas had raised a row in Griffin's store, and had beaten two or three men. Griffin had put him out, but he came back and went out again, but was still present and drunk when pointed out to the police; he refused to be arrested and got into another man's wagon. Was not this upon fresh and immediate pursuit? This was certainly within the principle laid down by Lord Hale, cited above. See also case of *City Council* v. *Payne*, 2 *N. & McC.* *475. We think the arrest, under the special circumstances of *this case*, as detailed in the evidence, was legal. Without such power on the part of policemen under such circumstances, municipal authorities for the preservation of peace and good order would be worthless, and our towns and cities would be frequently subjected to uncontrolled violence and disorder.

Next exception. "Because his Honor erred in receiving testimony to contradict defendants and defendants' witnesses, without laying the foundation therefor according to the rules of evidence. It is a rule of evidence, that before a witness can be impeached by evidence that he has made statements out of court different from those made on the stand, the foundation must be laid by stating to him time, place and person. We do not see that this rule has been violated here. The rule does not preclude a party from proving that what the witness has testified to in court is untrue. If so, truth, which is the object of judicial investigation,

would seldom be found. The question was, did the defendant Sims use a certain expression, and also whether Mikell was there. Sims had denied using the expression and Mikell had denied being present. The State was allowed, after these denials, to prove that Sims did use the expression and that Mikell was present. This violated no rule of evidence.

The exception as to cumulative testimony is equally untenable. The admission of such evidence was within the discretion of the judge. 2 *Phil. Ev.* 912.

We do not see that the Circuit judge violated the inhibition of Art. IV., § 26 of the constitution, by charging upon the facts of the case. What he said about there being a tumultuous assemblage at Griffin's store on that day, and the calm that came over the crowd when the police arrived, was not pertinent to the issue. The jury was not charged with the finding of these facts. Their inquiry was whether after the police arrived they had been riotously assaulted and beaten, and whether a prisoner subsequently arrested by them had been rescued from their grasp. The statement of the judge objected to had nothing to do with these questions and could not have affected the verdict.

The appeal must fail also as to the exception that but one counsel was allowed to cross-examine the witnesses for the State. The offenses charged were riot and rescue, the defendants were all tried together. In fact they had no right to sever if they had demanded it. *State* v. *Littlejohn,* 1 *Bay* 316. The case was an entirety. Besides, the motion made was one addressed to the discretion of the court; it appertained to the conduct of the cause in court, of which the presiding judge is more competent to determine than any one else. Without this power on the part of the judges, cases would be interminable. We do not see that any legal right of the defendant was infringed or refused. In the absence of this we have no power to interfere.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

McIver and McGowan, A. J.'s, concurred.