Justice PLEICONES.
I respectfully dissent because I find there is no criminal offense denominated “high and aggravated breach of the peace” (BPHAN) cognizable in circuit court. Since there is no such offense, I would vacate appellant’s conviction and sentence. See, e.g., State v. Sutton, 340 S.C. 398, 532 S.E.2d 283 (2000) (“conviction” of an offense not recognized in South Carolina is void for lack of subject matter jurisdiction).[4]
The majority concludes that BPHAN is a common law offense. While I acknowledge that this Court has the ability to create such a crime if it chooses,[5]1 find no evidence that we have done so.[6] My conclusion that BPHAN is not a criminal *601 offense in South Carolina is based upon my review of the common law understanding of breach of the peace, and the nature of the statutes upon which the majority relies to find the legislature has permitted BPHAN to be prosecuted in General Sessions.[7]
I begin my analysis with the Reception Statute. This statute, enacted in 1712 by the General Assembly of the Colony of South Carolina, adopted English common law as the law of South Carolina. The Reception Statute is currently codified at S.C.Code Ann. § 14-1-50 (1976).[8]
In 1712, as today, breach of the peace occupies an unusual status in England as a civil “offense.” In order to hold that BPHAN is a common law criminal offense in South Carolina, we must find the opinion in which the Court recognized and defined this offense. State v. Horne, supra. I suggest that there is no such opinion.[9]
At common law, an individual may be arrested for breach of the peace if a breach has occurred, or if one is imminent. An English police officer arresting an individual for breach of the peace may either detain the individual until the threat of breach has passed, or bring the individual before a magistrate to be “bound over” to keep the peace or to be of ‘good behavior’ or both. See Albert v. Lavin [1982] A.C. 546. While an individual may be arrested, detained, or placed under a surety bond if he breached or threatened the peace, breach of peace is not a criminal offense at common law in England. As Blackstone explained:
*602 Any justice of the peace may, ex officio, bind all those to keep the peace who in his presence make any affray, or threaten to kill or beat another, or contend together with hot and angry words, or go about with unusual weapons or attendance, to the terror of the people; and all such as be known to be common barretors; and all as are brought before him by the constable for a breach of the peace in his presence; by causing the person to post a surety as security for the peace.
k Blackstone’s Commentaries on the Laws of England pp. 254-255.
When South Carolina received the common law in 1712, we accepted the concept of breaches of the peace as non-criminal offenses, but nonetheless acts which subjected an individual to arrest. For example, from 1895 until 1976, the state constitution defined a magistrate’s jurisdiction to include “the power to bind over to keep the peace and for good behavior for a time not to exceed twelve months.” S.C. Const. art. V, § 21 (1895); see State v. Garlington, 56 S.C. 413, 34 S.E. 689 (1900) (authority of magistrate to commit to jail in lieu of requiring peace bond).
This understanding of non-criminal breach of the peace as a matter within the magistrate’s jurisdiction is confirmed by an opinion of the Attorney General. In a 1969 opinion,[10] he explained the peace bond process under the 1895 Constitution. A person arrested for breach of the peace was brought before a magistrate who, upon a showing that the person was likely to commit a crime, could place that individual under a surety bond. The duration of the bond could not exceed one year, and if the individual failed to post the bond, then the individual could be committed to jail by the magistrate for a period up to a year. The individual was released only when the bond was posted, the surety period expired, or the magistrate so ordered. See also State v. Garlington, supra. The opinion further states that should the individual violate the terms of his surety bond by breaching the peace, he could not be incarcerated for that breach although the bond or part of it could be forfeited. Instead, the individual could only be criminally punished for the specific crime he committed which *603 breached the terms of his bond. See also 4 Blackstone’s Commentaries at pp. 252-53.
While no longer a part of our State Constitution, the practice of permitting magistrates to place individuals under peace bonds is retained by statute. South Carolina Code Ann. § 22-5-140 (2007)[11] authorizes a magistrate to require a “peace bond” to ensure an individual keeps the peace or to jail that person if he does not post the bond. Cf. State v. Garlington, supra (same procedure under 1895 Const, art. 5, § 21).
In addition to continuing the “peace bond” practice, § 22-5-140 acknowledges a magistrate’s authority to require those engaged in “riotous or disorderly conduct” “to answer to an indictment.” Section 22-5-140, which authorizes the magistrate to refer “rioters” or “disorderly conductors” to the solicitor, is followed by S.C.Code Ann. § 22-5-150 (2007), titled “Arrest of persons threatening breach of peace; trial or binding over.” This section provides:
Magistrates may cause to be arrested (a) all affrayers,[12] rioters,[13] disturbers and breakers of the peace, (b) all who go armed offensively, to the terror of the people, (c) such as utter menaces or threatening speeches and (d) otherwise dangerous and disorderly persons. Persons arrested for any of such offenses shall be examined by the magistrate before whom they are brought and may be tried before him. If found guilty they may be required to find *604 sureties of the peace and be punished within the limits prescribed in § 22-3-560 or, when the offense is of a high and aggravated nature, they may be committed or bound over for trial before the court of general sessions.
Section 22-5-150 lists the criminal offenses which are traditionally categorized as “Offenses Against the Public Peace,” e.g., affrays, riots, and disturbing the peace. See Russell, A Treatise on Crimes & Misdemeanors (8th Am. ed.1857); 4 Blackstone’s Commentaries Chapter 11, passim. An individual who commits or threatens to commit any of these acts is subject to arrest and to being placed under a peace bond. The individual may also be referred to the solicitor for prosecution. Under the statute, that prosecution would be for the affray, riot, or other named offense, and not for breach of the peace. While appellant’s indictment twice references § 22-5-150, it does not charge him with any of these named offenses.[14]
As explained below, I believe history supports my reading of sections 22-5-140 and -150. Both sections 22-5-140 and - 150 derive from 1870 Act No. 288(402). This Act defined the jurisdiction of Trial Justices, the predecessors to magistrates, and provides the foundation for our current magistrate’s court statutes. This Act provided in pertinent part:
Sec. 2.[15] Trial Justices shall have jurisdiction of all offences which may be subject to the penalties of either fine or forfeiture not exceeding one hundred dollars, or imprisonment in the Jail or Work House not exceeding thirty days, and may impose any sentence within those limits, singly or in the alternative.
Sec. 3.[16] They may punish by fine not exceeding one hun *605 dred dollars, or imprisonment in the Jail or House of Correction not exceeding thirty days, all assault and batteries, and other breaches of the peace, when the offence is not of a high and aggravated nature, requiring, in their judgment, greater punishment.
Sec. 4.[17] They may cause to be arrested all affrayers, rioters, disturbers and breakers of the peace, and all who go armed offensively, to the terror of the people, and such as utter menaces or threatening speeches, or otherwise dangerous and disorderly persons.
Persons arrested for any of said offences shall be examined by the Trial Justice before whom they are brought, and may be tried before him, and, if found guilty, may be required to find sureties of the peace, and be punished within the limits prescribed in Section 2, or, when the offence is of a high and aggravated nature, they may be committed or bound over for trial before the Court of General Sessions.
In State v. McKettrick, 14 S.C. 346 (1880), the Court explained that, among other things, 1870 Act No. 288 divided assaults and batteries into two classes: those of a high and aggravated nature and others “below that grade,” the lesser offenses lying within the exclusive jurisdiction of the Trial Justices [i.e., magistrates] and the high and aggravated within the exclusive jurisdiction of the court of general sessions. Further, McKet-trick explains that the Trial Justice must refuse to adjudicate a “high and aggravated” assault and battery but instead must “send the case up” to General Sessions. McKettrick, 14 S.C. at 354; see State v. Sims, 16 S.C. 486 (1886) (explaining that general sessions has jurisdiction to try only high and aggravated rioters).
Just as Act No. 288 divided assaults and batteries into two classes, it also divided offenses which breach the peace into two jurisdictional categories, simple breaches triable in magistrates’ courts and high and aggravated breaches triable in General Sessions. McKettrick, swpra (assaults and batteries); Sims, supra (riots). However, Act No. 288 did not create a new magistrate level crime called “breach of the peace” nor did it create a new General Sessions offense known as “breach *606 of the peace of a high and aggravated nature.”[18] As the Court explained in State v. Robinson, 31 S.C. 453, 10 S.E. 101 (1889) the term “assaults and batteries and other breaches of the peace of a high and aggravated nature [used in the Act] ... [did not] create a new and distinct offense of that character; but rather, [the term] indicate[s] a class of cases of which the court of general sessions had jurisdiction.” Id. at 456, 10 S.E. at 102. Section 22-5-150 reflects the jurisdictional boundary between circuit court and magistrates’ court for criminal breaches of the peace, a division created by 1870 Act No. 288. E.g., State v. Grant, 34 S.C. 109, 12 S.E. 1070 (1891).
That our law retains the principle that persons whose criminal offense breaches the peace in a “high and aggravated” manner should be referred to General Sessions is reflected in Title 16 as well as in Title 22. Certain offenses named in Section 4 of 1870 Act No. 288 as breaching the peace, and found today in § 22-5-150, are also found in Title 16, Chapter 5, titled “Offenses Against Civil Rights.” See § 16-5-120 (establishing additional penalty for unarmed person who is convicted of “engaging in a riot, rout,[19] or affray”) and § 16-5-130 (Riot).[20] Consistent with § 22-5-150’s division of offenses which breach the peace into those triable in magistrate’s court and those of a high and aggravated nature which should be bound over to General Sessions, § 16-5-140 requires persons arrested for violation of an “Offense Against Civil Rights” be brought “for a trial before such court as shall have jurisdiction of the offense.” In other words, § 16-5-140 recognizes that “Offenses Against Civil Rights” are properly tried either in magistrate’s court or in General Sessions, depending upon the aggravated nature of the defendant’s conduct. See also 1895 S.C. Const, art. V, § 18 recognizing concurrent jurisdiction of *607 circuit court and magistrates’ court “in all cases of riot, assault and battery, and larceny....”
While the common law did not recognize a criminal offense known as “breach of the peace” in 1712, nor does England today, South Carolina has come to acknowledge a common law offense with this name. The origin of this common law crime is not clear, but it appears to have evolved from our use of the generic term “breach of the peace” to identify the criminal act committed by the defendant,[21] where the underlying criminal conviction was either for the violation of an ordinance forbidding disturbing the peace,[22] or for one of the criminal offenses generally categorized as “Offenses Breaching the Peace.” Over time, “breach of the peace” has evolved into a synonym for “disturbing the peace.”[23]
*608 However, there is nothing in this Court’s decisions to suggest that concomitant with our recognition of a common law magistrate’s level offense denominated “breach of the peace” that we also created a new crime known as “high and aggravated breach of the peace,” punishable in General Sessions. Instead, as explained above, the statutory reference to high and aggravated breach of the peace derives from an Act directing that some offenses which breach the peace should be tried in the magistrates court and others in General Sessions. § 22-5-150.
My review of the common law history of breach of the peace, including the Court’s decisions, and my review of related South Carolina statutes and the 1895 Constitution, convinces me that this Court has not created a common law criminal offense cognizable in General Sessions denominated “Breach of the Peace of a High and Aggravated Nature.” I would therefore vacate appellant’s conviction and sentence for this non-existent crime.
HEARN, J., concurs.

. Were I to reach the merits of appellant’s directed verdict issue, my analysis would be confined to a review of the evidence of aggravated breach of the peace up to the point of the victim’s death, and not with the "resultant melee” or the "many members of the public [who] witnessed the victim’s death,” or "the extremely disturbing nature of the crime [sic] scene.” Because the jury absolved appellant of criminal responsibility for that tragedy, the consequences of the victim’s death are not attributable to appellant for purposes of the directed verdict motion.

. "The Court has the right and the duty to develop the common law of South Carolina to better serve an ever-changing society,” including recognizing new criminal offenses. State v. Horne, 282 S.C. 444, 319 S.E.2d 703 (1984) (recognizing new common law offense of feticide).

. The single reference to BPHAN in our jurisprudence is found in State v. Mason, 108 S.C. 410, 94 S.E. 870 (1918). The Mason opinion states the defendant was indicted and convicted of assault and battery with intent to kill and aggravated breach of the peace. Unfortunately the transcript and briefs from this period, including Mason's indictments from 1916 and 1918, were destroyed in a flood and thus it is impossible *601 to confirm the actual aggravated offense for which Mason and his codefendant Davis were indicted and convicted.

. I regret that the majority has difficulty following my convoluted and complicated analysis. Were they able to do so, they would not conclude that my logic is faulty.

. Common law of England shall continue in effect. All, and every part, of the common law of England, where it is not altered by the Code or inconsistent with the Constitution or laws of this State, is hereby continued in full force and effect in the same manner as before the adoption of this section.

. If I am correct, and it is with this decision that we create BPHAN, then we must reverse appellant's conviction as a new common law crime applies only prospectively. State v. Horne, supra.

. 1969 Atty. Gen. Op. No. 2720 p. 171.

. The text of § 22-5-140 provides:
Any magistrate shall command all persons who, in his view, may be engaged in riotous or disorderly conduct to the disturbance of the peace, to desist therefrom and shall arrest any such person who shall refuse obedience to his command and commit to jail any such person who shall fail to enter into sufficient recognizance either to keep the peace or to answer to an indictment, as the magistrate may determine.

. An affray is a fight between two or more persons in a public place, “to the terror of the people.” State v. Sumner, 36 S.C.L. (5 Strob.) 53 (1850).

. A riot is "a tumultuous disturbance of the peace, by three or more persons assembled together, of their own authority, with the intent mutually to assist each other against anyone who shall oppose them, and putting their design into execution in a terrific and violent manner, whether the object was lawful or not....” State v. Connolly, 37 S.C.L. (3 Rich.) 337 (1832); see also State v. O'Donald, 12 S.C.L. (1 McCord) 532 (1822) (arrest of judgment where riot indictment only named two people).

. To put it another way, a person charged with the criminal offense of breach of the peace is not subject to being waived up to General Sessions under the plain language of § 22-5-150. This "omission” reflects the purely civil nature of breach of the peace in 1870 when the statute was adopted, a status that did not change until 1940. See note 20, infra.

. The jurisdiction of magistrates is now found in S.C.Code Ann. § 22-3-550 (Supp.2014).

. The statute defining the criminal sentencing limits for breaches of the peace tried in magistrates’ court is now found in S.C.Code Ann. § 22-3-560 (Supp.2014).

. Section 4 is now codified in § 22-5-150.

. Had the Act created the crimes, we would be concerned with a statutory offense rather than a common law one.

. A rout differs from a riot in that the defendants meet and "do not actually execute their purpose, but only make some motion towards its execution.” State v. Sumner, 29 S.C.L. (2 Speers) 599 (1844). Unlawful assembly is a lesser included offense of rout. Id..; State v. Brazil, 24 S.C.L. (Rice) 257 (1839).

. See footnote 9 and 10, supra, defining these terms.

. See e.g. Lining v. Bentham, 2 S.C.L. (2 Bay) 1 (1796) (referring to a non-party as having been guilty of a breach of the peace).

. See, e.g., State v. Praser, 173 S.C. 284, 175 S.E. 551 (1934).

. The first reported decision stating the defendants were convicted in magistrate’s court of the crime of breach of the peace, and defining that crime, is State v. Langston, 195 S.C. 190, 11 S.E.2d 1 (1940). The definition in Langston is taken from "Kansas v. Hebert," annotated in 48 A.L.R. 81. Id. However, the defendant in the Kansas case referenced in Langston, was actually convicted of “disturbing” the peace, and it is the definition of that offense which is adopted in Langston. See State v. Hebert, 121 Kan. 329, 246 P. 507 (1926). To the extent Langston relies on South Carolina civil decisions for its definition of the crime of breach of the peace, those cases are inapposite. In those cases, the plaintiff claimed the defendant had committed a trespass quare clausum fregit when repossessing its property, and the defendant asserted as its defense that the repossession had been peaceful. See, e.g., Lyda v. Cooper, 169 S.C. 451, 169 S.E. 236 (1933); Childers v. Judson Mills Store Co., 189 S.C. 224, 200 S.E. 770 (1939); see also Jordan v. C. & S. Nat'l Bank of S.C., 278 S.C. 449, 298 S.E.2d 213 (1982) (holder of chattel mortgage may retake property either peacefully or by claim and delivery proceedings). Our criminal opinions continue to rely, erroneously in my opinion, on these civil cases when defining the crime of breach of the peace. See, e.g., State v. Peer, 320 S.C. 546, 466 S.E.2d 375 (Ct.App.1996). In addition, our cases cite to Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) for the definition of the common law offense of breach of the peace. Cantwell notes that breach of the peace is "a common law concept of the most general and undefined nature,” that punishes "violent acts” and "acts and words that destroy or menace public order and integrity.” The Court stated that "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public *608 safety, peace, or order appears, the power of the State to prevent or punish is obvious.” Further, the Court was careful to note in discussing the state conviction for common law breach of the peace that “The court below has held that petitioner’s conduct constitutes the commission of an offense under state law, and we accept its decision as binding upon us to that extent.” Id. at 308, 60 S.Ct. 900.